IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 09-614 |
| | : | |
| DONATO RODRIGUEZ, ET AL. | : | |

**MEMORANDUM OPINION**

**J. Tucker**                                                                                                            **May \_\_\_\_, 2010**

Presently before this Court are Defendant Donato Rodriguez's Motion to Suppress Physical Evidence and Memorandum in Support thereof (Docs. 92-93), the Government's Response in Opposition thereto (Doc. 100), Defendant's Reply (Doc. 101), and the arguments raised by the parties at a hearing held on May 5, 2010. For the reasons outlined below, Defendant's Motion is denied.

**I.     BACKGROUND**

Defendant Donato Rodriguez ("Defendant") is charged with drug-related offenses in connection with his alleged leadership of a Philadelphia heroin distribution organization. His co-defendants, Raul Rodriguez ("R. Rodriguez"), Michelle Mota ("Mota"), and Josephina Torres ("Torres"), have been charged with drug-related offenses in connection with their alleged packaging and distribution of the heroin.

As part of the investigation of this case, Drug Enforcement Administration ("DEA") Special Agents ("SAs") and Task Force Officers ("TFOs") conducted a surveillance of Mota, who was believed to be engaged in the processing and packaging of heroin for street sale, based on

information provided by a confidential source. On August 6, 2009, the agents and officers followed Mota, who was operating a silver Chrysler Sebring, to a Wal-Mart and a beauty supply store, where she purchased a coffee grinder and beauty products that, in their training and experience, are commonly used in the packaging of heroin for distribution. Thereafter, it appeared that Mota suspected that she was under surveillance and took several actions to evade the surveillance. Later that evening, she was observed exiting and re-entering the residence located at 5262 N. Howard Street ("the Howard Street residence").

On August 19, 2009, DEA agents and officers observed Defendant driving the same silver Sebring to a drug transaction in which he sold heroin to a customer from Delaware. The next day, the agents and officers observed Defendant leaving the Howard Street residence to go to a drug transaction involving the sale of approximately 100 bundles of heroin to an undercover officer for $3,500.00. Torres allegedly served as the courier for both transactions. Defendant was followed to an Auto Zone store where he met up with Mota, and drove to the Howard Street residence in the silver Sebring. Mota entered the residence, while Defendant remained in the garage. Defendant subsequently was arrested, and the $3,500.00 in Official Authorized Funds ("OAF") was recovered from his pants pockets.

Later that evening, a search was conducted at the residence located at 3514 N. Ella Street ("the Ella Street residence"), leading to the recovery of, *inter alia*, drug paraphernalia and approximately $50,000.00 worth of heroin. The agents and officers learned from a CS that the heroin had been brought to that residence within the previous two weeks, was supplied by Defendant, and was delivered to the residence by Mota. Defendant and Mota admitted that they lived at the Howard Street residence, and Defendant informed the agents and officers that he had

approximately $40,000.00 in one of the bedrooms in that residence.

On August 21, 2009, TFO Iran Millan prepared and swore out an affidavit for a search warrant for the Howard Street residence, which was signed by a Philadelphia Bail Commissioner. The agents and officers conducted a search of that residence and recovered, *inter alia*, heroin packaged for distribution, approximately $37,860.00 in cash, and numerous stamps commonly used on packaged drugs. Defendant moves this Court to suppress the physical evidence recovered from the Howard Street residence.

## II. DISCUSSION

In support of his motion, Defendant avers that the search warrant affidavit lacked "sufficient information from which the issuing authority could determine that a substantial basis existed to find probable cause to search either for contraband or evidence of an alleged crime at the premises of 5262 N. Howard Street." (Def.'s Mem. Supp. Mot. to Suppress 4.) Defendant also contends that there was an insufficient nexus between the residence searched and the alleged drug activity to support issuance of the search warrant. (Def.'s Reply 2.) In response, the Government argues that: (1) the affidavit established that there was probable cause to search the residence for drug-related evidence; and (2) the officers acted in good faith in executing the facially valid warrant. (Gov.'s Resp. 1.) In addition, the Government argues that direct evidence of a nexus between the residence and the drug activity is unnecessary to support the issuance of a search warrant, yet such proof exists here. (Gov.'s Resp. 7.) The Court finds Defendant's motion unpersuasive.

The determination of whether probable cause exists for the issuance of a warrant is informed by the totality of the circumstances. Illinois v. Gates, 462 U.S. 213, 238 (1983). The

duty of the issuing magistrate "is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Id. Further, "the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . [concluding]' that probable cause existed." Id. at 238-39 (citing Jones v. United States, 362 U.S. 257, 271 (1960)). The "resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." Id. at 237 n. 10 (citing United States v. Ventresca, 380 U.S. 102, 109 (1965)).

The Third Circuit has recognized that, "[d]irect evidence linking the place to be searched to the crime is not required for the issuance of a search warrant." United States v. Burton, 288 F.3d 91, 103 (3d Cir. 2002) (citations omitted). Rather, "[a] sufficient nexus between the items to be searched and the place to be searched may be established by direct evidence or inferences." United States v. Patrick, 119 Fed. App'x 385, 390 (3d Cir. 2005). Indeed, "probable cause can be, and often is, inferred by 'considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide' the fruits of his crime." Burton, 288 F.3d at 103. It is reasonable to infer that drug dealers often store evidence of drug crimes in their residences, but such an inference must be based on evidence supporting the following premises: (1) the person suspected of drug dealing is actually a drug dealer; (2) the place to be searched is possessed by, or the domicile of, the dealer; and (3) the residence contains contraband linking it to the dealer's drug activities. Id. at 104.

Here, the Court finds that evidence supporting those premises was sufficiently set forth in

4

the search warrant affidavit, and that the issuance of the warrant was supported by probable cause. Specifically, the affidavit indicates that DEA officers and agents observed Mota purchasing materials that are commonly used in drug packaging (Millan Aff. ¶¶ 10-14), acting evasively upon suspecting that she was under surveillance (Millan Aff. ¶¶ 16, 19), and entering and exiting the Howard Street residence several times (Millan Aff. ¶¶ 23, 25, 34). In addition, the officers observed Defendant driving to a drug transaction in the same vehicle that Mota had previously driven (Millan Aff. ¶ 26), leaving the Howard Street residence to go to a drug transaction involving an undercover officer (Millan Aff. ¶ 35), selling approximately 100 bundles of heroin to the undercover officer (Millan Aff. ¶¶ 36-39), and returning with Mota to the same Howard Street residence (Millan Aff. ¶¶ 41-42). Those observations confirm that the person suspected of drug dealing is a drug dealer. Moreover, Defendant and Mota admitted to living at that address, and Defendant informed the officers that he had approximately $40,000.00 in a bedroom in that residence. (Millan Aff. ¶ 45.) Furthermore, a CS informed the officers that the heroin seized from the Ella Street residence was brought from the Howard Street residence within the previous two weeks, and that Defendant supplied the bulk heroin used by the organization. (Millan Aff. ¶ 44.)

Based on the foregoing, the Court rejects Defendant's argument that "[t]here was absolutely no evidence linking the Howard Street address with the alleged drug dealer's activities." (Def.'s Reply 2.) On the contrary, as set forth above, there was ample evidence in the search warrant affidavit to establish a "fair probability" that contraband would be found at the Howard Street residence. Therefore, the search warrant was validly sought and approved, and this Court will not suppress the evidence recovered from that residence.

An appropriate Order follows.